IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 22-00144-TFM-1 |
| | ) |
| KERRY LAMARK PACKER | ) |

**PLEA AGREEMENT**

The defendant, **KERRY LAMARK PACKER**, represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

**RIGHTS OF THE DEFENDANT**

1. The defendant understands his rights as follows:

    a. To be represented by an attorney;

    b. To plead not guilty;

    c. To have a trial by an impartial jury;

    d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

    e. To not be compelled to incriminate himself.

**WAIVER OF RIGHTS AND PLEA OF GUILTY**

2. The defendant waives rights b through e, listed above, and pleads guilty to Count One of the Superseding Indictment, charging a violation of Title 18, United States Code, Section 922(g)(1), Possession of a Firearm by a Prohibited Person (Felon).

1

3. The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing that will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge that has been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offense.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charge. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that

the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

9. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because he is guilty.

10. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTY

11. The maximum penalty the Court could impose as to Count One of the Superseding Indictment is:

    a. Fifteen (15) years' imprisonment. If the defendant has three prior convictions for serious drug offenses or violent felonies committed on separate occasions, a 15-year mandatory minimum sentence and a five-year term of supervised release will apply pursuant to 18 U.S.C. §§ 924(e), 3559(a)(1), and 3583(b)(1);

    b. A fine not to exceed $250,000;

    c.    A term of supervised release of three (3) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

    d.    A mandatory special assessment of $100.00; and

    e.    Such restitution as may be ordered by the Court.

## **SENTENCING**

12.    The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

13.    The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

14.    The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing

information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

15. Both the defendant and the United States are free to allocute fully at the time of sentencing.

16. The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## FORFEITURE

17. The defendant agrees to confess the forfeiture to the United States of all properties that represent proceeds of his criminal activities or that facilitated any aspect of these illegal activities. The property to be forfeited includes, but is not limited to, the following:

    a. One (1) FNH USA, model FNS-9C, 9mm pistol, serial number CSU0053256;

    b. One (1) Stag Arms, model Stag-15, 5.56mm rifle, serial number 276494;

    c. Thirteen (13) rounds of 9mm ammunition; and

    d. Thirty (30) rounds of .223 caliber ammunition.

## FINANCIAL OBLIGATIONS

18. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to

be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

19. The United States will not bring any additional charges against the defendant related to the facts underlying the Superseding Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

20. The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

## APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35

21. The defendant understands and agrees that he has no right to cooperate, and that the decision whether to allow him to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

   a. The defendant shall fully, completely, and truthfully respond to all questions put to him by law enforcement authorities regarding the underlying facts of the offense with which he is charged, as well as the

        underlying facts of any criminal offense(s), state or federal, of which he has information or knowledge.

b.     The defendant acknowledges that he understands that he shall provide truthful and complete information regarding any offense about which he has knowledge or information regardless of whether law enforcement authorities question him specifically about any such offense. This provision requires the defendant to divulge all information available to him even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c.     The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which his cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance he shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d.     If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any

polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e. The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in his possession or under his control and which are relevant to his participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f. The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g. If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of

       any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should he provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h.    The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by him from his illegal activities or obtained by others associated with him or of which he has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

  (1) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Superseding Indictment; and

  (2) permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during his breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i. Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during his cooperation. The defendant acknowledges and agrees that the information that he discloses to the United States pursuant to this agreement may be used against him in any such prosecution.

j. The United States and the defendant agree that the defendant will continue his cooperation even after he is sentenced in the instant matter. His failure

to continue his cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Superseding Indictment, which are to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights he may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

22. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

   a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

   (1) any sentence imposed in excess of the statutory maximum;

   (2) any sentence which constitutes an upward departure or variance from the advisory guideline range.

   The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

23. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

24. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

25. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

26. The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

27. In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

28. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: November 29, 2022

Justin D. Roller
Assistant United States Attorney

Date: Nov. 29, 2022

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Superseding Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 12-9-22

Kerry Lamark Packer
Defendant

I am the attorney for the defendant. I have fully explained his rights to him with respect to the offense charged in the Superseding Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 12/9/22

Christ N. Coumanis
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 22-00144-TFM-1 |
| | ) |
| KERRY LAMARK PACKER | ) |

## FACTUAL RESUME

The defendant, **KERRY LAMARK PACKER** ("**PACKER**"), admits the allegations of Count One of the Superseding Indictment.

## ELEMENTS OF THE OFFENSE

**PACKER** understands that in order to prove a violation of Title 18, United States Code, Section 922(g)(1), as charged in Count One of the Superseding Indictment, the United States must prove:

First: the defendant knowingly possessed a firearm or ammunition in or affecting interstate or foreign commerce;

Second: before possessing the firearm or ammunition, the defendant had been convicted of a felony—a crime punishable by imprisonment for more than one year; and

Third: at the time the defendant possessed the firearm or ammunition, the defendant knew he had previously been convicted of a felony.

## OFFENSE CONDUCT

**PACKER** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **PACKER's** plea of guilty. The statement of facts does not contain each and every fact known to **PACKER** and to the United States

1

concerning the defendant's involvement in the charges set forth in the plea agreement. All dates, amounts, and locations referenced below are approximations.

On January 29, 2022, officers with the Pine Hill, Alabama Police Department pulled over a 2014 Chevrolet truck for only having one operable headlight. The traffic stop took place on State Highway 10 near Industrial Drive in Wilcox County, which is within the Northern Division of the Southern District of Alabama. **PACKER** was the driver of the truck. The only other occupant of the truck, codefendant Kelvin Clinton Hicks ("Hicks"), was the front-seat passenger.

An officer approached the driver's side of the truck and **PACKER** opened the driver's-side door, noting to the officer that the window would not let down. The officer smelled a strong odor of alcohol coming from the truck, and **PACKER**, whose speech was slurred, appeared to be intoxicated. The officer asked **PACKER** for his driver's license and proof of insurance. **PACKER** said he did not have a valid driver's license and provided an insurance card that was expired.

The officer informed **PACKER** that he had stopped him for the broken headlight. **PACKER** said he knew the light was out and stated that it blows out every time he takes the truck through the car wash. While **PACKER** was looking for a valid insurance card, the officer noticed a rifle lying in plain view on the back seat of the truck, within arm's reach of both **PACKER** and Hicks. That rifle was a Stag Arms, model Stag-15, 5.56mm rifle, serial number 276494, which was loaded with 30 rounds of .223 caliber ammunition. The officer could also see the wood stock of another gun (which turned out to be a pellet gun) on the back floorboard. Additionally, the officer saw an open Bud Light can near the front console of the truck between **PACKER** and Hicks.

The officer asked **PACKER** if there were any other guns inside the truck besides the rifle. **PACKER** said there might be a pistol inside the center console of the truck. The officer asked **PACKER** to step out of the truck so that he could retrieve the pistol for officer safety. **PACKER**

2

complied. The officer then retrieved the 5.56mm rifle from the backseat and looked inside the console where **PACKER** said he thought the pistol would be. The console was empty and did not have a gun inside it. **PACKER** told the officer that he could search the truck if he wanted to.

The officer returned to his marked patrol unit to run identity checks on **PACKER** and Hicks (who provided a Florida identification card), and to run the rifle to see if it had been reported stolen. During that process, the officer learned that **PACKER's** driver's license had been suspended and that he was a convicted felon who was not allowed to possess guns.

The officer returned to the truck to perform field sobriety tests on **PACKER**, who showed signs of impairment. **PACKER** admitted to the officer that he had been drinking and noted that his birthday was the next day. The officer asked **PACKER** if he knew was not supposed to possess guns. **PACKER** asked, "Why not?" The officer noted **PACKER's** prior felony convictions, and **PACKER** replied, "From 22 years ago." The officer asked who the rifle belonged to, and **PACKER** said it belonged to his wife's nephew. **PACKER** admitted that he had moved the rifle and placed it on the backseat of the truck. The officer arrested **PACKER** for DUI, read him his *Miranda* rights, and put him in the backseat of his patrol car.

As the officer was putting **PACKER** in his patrol car, Hicks got out of the truck. As Hicks got out of the truck, officers saw a pistol in plain view on the passenger floorboard. Officers retrieved the pistol, which was an FNH USA, model FNS-9C, 9mm pistol, serial number CSU0053256, loaded with 13 rounds of 9mm ammunition. Officers arrested and *Mirandized* Hicks, who declined to make a statement.

**PACKER** admits that he knowingly possessed the 5.56mm rifle, but he denies that he possessed the 9mm pistol or the drugs that officers found on Hicks's side of the truck. At the time he possessed the rifle, **PACKER** knew he had been convicted of numerous felony offenses for

3

which he had previously served prison time, including: Possession of Cocaine on January 9, 2003 in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, case number 02-006495-CF; Possession of Cocaine on April 26, 1999 in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, case number 98-003431-CF; and Sale of Cocaine and Possession of Cocaine with Intent to Sell on November 14, 1997 in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, case number 97-10942-CF.

Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives examined the 5.56mm rifle and the 9mm pistol seized from the truck for purposes of establishing interstate nexus. Agents determined that both guns are "firearms" as defined in 18 U.S.C. § 921(a)(3) and that neither was manufactured in Alabama, meaning that both guns traveled in and affected interstate commerce as of the date police seized them.

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: December 8, 2022

Justin D. Roller
Assistant United States Attorney

Date: Dec. 8, 2022

Kasee S. Heisterhagen
Assistant United States Attorney
Deputy Chief, Criminal Division

4

Date: 12-9-22

Kerry Lamark Packer
Defendant

Date: 12/9/22

Christ N. Coumanis
Attorney for Defendant

5